IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAUL L. FELKER, et al.,

        Plaintiffs,

    v.

USW LOCAL 10-901, USW LOCAL 10-901
(SU) AND USW LOCAL 10-901 (NE)
MARCUS HOOK REFINERY WORKERS
INVOLUNTARY TERMINATION PLAN,

        Defendant.

CIVIL ACTION
NO. 13-7101

**OPINION**

**Slomsky, J.**                                                                              **April 23, 2015**

I.     **INTRODUCTION**

Plaintiffs are former employees of Sunoco, Inc. ("Sunoco") and bring this case under the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., seeking

benefits they claim are due to them under a severance plan established through negotiations with

Sunoco. (Doc. No. 1 ¶¶ 1-3.) On May 1, 2014, following a pretrial conference, the Court

ordered the parties to submit briefs on two issues that are endemic to this kind of ERISA case:

(1) the applicable standard of review under ERISA and (2) whether discovery outside the

administrative record should be permitted. (Doc. No. 10.) The parties have submitted their

briefs and the Court held a hearing on these issues on June 20, 2014. (See Doc Nos. 12, 13, 14,

17, 19.)

The applicable standard of review and whether to permit discovery outside the

administrative record are now ripe for decision. For reasons that follow, the Court will apply the

arbitrary and capricious standard of review and permit Plaintiffs to conduct limited discovery only into whether the Plan Administrator had a conflict of interest.

## II.    BACKGROUND

During the relevant time period, Plaintiffs were employees of Sunoco, members of United Steel Workers Local 10-901 (the "Union"), and assigned to Sunoco's Marcus Hook Mobile Work Force (the "MWF"). (Doc. No. 1 ¶ 2.) The MWF consisted of maintenance workers employed at Sunoco's Marcus Hook Refinery who also worked at Sunoco's Philadelphia Refinery. (Doc. No. 13 at 3.) Defendant (the "Plan") is an employee welfare benefit and severance plan subject to the requirements of ERISA, 29 U.S.C. §§ 1001 et seq. (Doc. No. 1 ¶ 3.)

The Plan was established pursuant to an agreement between Sunoco and Plaintiffs' Union, and became effective on or about February 21, 2012. (Doc. No. 12 at 2.) According to a section of the Plan entitled "Background and Purpose of the Plan," the Plan "is intended to alleviate financial hardships which may be experienced by employees of [Sunoco] whose employment is terminated in connection with [Sunoco's] idling of the main processing units at its Marcus Hook Refinery." (Doc. No. 1-1 at 3.) Benefits awarded under the Plan are paid out of Sunoco's assets. (Id. at 11.)

The Plan states that it will be administered as follows:

**Plan Administration**

The Plan Administrator or his delegate has full responsibility for interpreting and administering the terms and provisions of the Plan. All interpretations, determinations and decisions of the Plan Administrator (or its delegate) in respect to any [matter] shall be final, conclusive and binding upon the Company, any employer, participants and all other persons claiming an interest in the Plan. The Plan Administrator is:

Plan Administrator
Sunoco, Inc.

1735 Market Street, STE LL
Philadelphia, PA 19103
(215) 977-6174

(Doc. No. 1-1 at 11.)

Sunoco designated its Chief Executive Officer ("CEO") to make decisions regarding the

Plan.  This designation was made in a resolution of the Board of Directors of Sunoco, dated

November 4, 1993, which provides as follows:

> [T]he Chief Executive Officer of this Corporation is hereby delegated full power
> and authority, in the name of and on behalf of this Corporation, to modify, amend,
> and terminate employee welfare benefit plans of this Corporation and to adopt
> new employee welfare benefit plans for this Corporation, and to sign such plans,
> insurance contracts, trust agreements, and other documents as he may deem
> necessary or desirable to make such modifications, amendments, terminations,
> and adoptions of such employee welfare benefit plans effective, provided that
> such modifications, amendments, terminations, and adoptions are, in his
> judgment, in the best interests of the Corporation.

(Doc. No. 19-1, Ex. A.)

On March 1, 2012, pursuant to the authority delegated to him in the November 4, 1993

Board Resolution, the CEO of Sunoco executed an Officer's Certificate appointing Vincent J.

Brigandi as "Plan Administrator" of the Plan.  (Doc. No. 19-1, Ex. B.)  The Officer's Certificate

provides that "the Plan Administrator may take all actions necessary to effectuate the intent of

this Officer's Certificate."  (Id.)

In September 2012, Sunoco sold its Philadelphia Refinery to Philadelphia Energy

Solutions ("PES").  (Doc. No. 12 at 3.)  On September 7, 2012, Plaintiffs were terminated by

Sunoco.  (Doc. No. 1 ¶ 12.)  That same day, Plaintiffs were hired by PES to work at the

Philadelphia Refinery under a Refining Contribution Agreement between Sunoco and PES.

(Doc. No. 13 at 3.)

Despite not losing any work time as a result of the changeover, on October 22, 2012

Plaintiffs filed their claim for severance benefits under the Plan. (Doc. No. 1 ¶ 16.) They

contend that they were involuntarily terminated by Sunoco because Sunoco idled the main

processing units at its Marcus Hook Refinery (Id. ¶ 12), even though they were immediately

transferred to the Philadelphia Refinery as part of the Refining Contribution Agreement between

Sunoco and PES. Because of their termination from the Marcus Hook Refinery, Plaintiffs allege

that they are due severance benefits under the terms of the Plan. (Id.)

Vincent Brigandi, as Plan Administrator, denied the claim. (Doc. No. 13-3, Exs. D, F.)

In a letter dated January 22, 2013, Brigandi explained his decision:

> Although the members of the MWF did terminate employment with Sunoco on
> September 7, 2012, such termination only occurred because of Sunoco's
> contribution of the assets of the Philadelphia Refinery to a joint venture with
> Philadelphia Energy Solutions (PES) for which PES is responsible for the
> operations of the Philadelphia Refinery. Members of the MWF were not
> terminated from employment in connection with the idling of the Marcus Hook
> Refinery and therefore, they are not entitled to severance benefits under the Plan.

(Doc. No. 13-3, Ex. D.)

On December 5, 2013, after exhausting their administrative remedies, Plaintiffs filed a

Complaint in this Court seeking judicial review of Brigandi's decision denying their request for

benefits. (Doc. No. 1.) On March 17, 2014, Defendant filed an Answer to the Complaint. (Doc.

No. 6.) On May 1, 2014, the Court held a pretrial conference with counsel for parties. (Doc. No.

9.) After the conference, the Court ordered the parties to file briefs on the standard of review

under ERISA and whether the Court should permit discovery outside the administrative record.

(Doc. No. 10.) On June 20, 2014, after the parties had filed their briefs, the Court held a hearing

on these issues. On August 6, 2014, pursuant to the Court's instruction during the June 20, 2014

hearing, Defendant filed a Memorandum of Law in Support of the Delegation of Discretionary

Authority to Plan Administrator Vincent Brigandi. (Doc. No. 19.)

### III.   STANDARD OF REVIEW

#### A.   Judicial Review in ERISA Cases

The Supreme Court has held that "a denial of benefits challenged under [ERISA] is to be reviewed [by a court] under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  If the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations, a court will review the decision under an abuse-of-discretion (or arbitrary and capricious) standard.[1] Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008); Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413 (3d Cir. 2011).  "Whether a plan administrator's exercise of power is mandatory or discretionary depends upon the terms of the plan." Luby v. Teamsters Health, Welfare, & Pension Trust Funds, 944 F.2d 1176, 1180 (3d Cir. 1991).  There are no "magic words" determining the scope of judicial review of decisions to deny benefits, and discretionary powers may be granted expressly or implicitly.  Id.  However, when a plan is ambiguous, it is construed in favor of the party claiming benefits. Heasley v. Belden & Blake Corp., 2 F.3d 1249, 1258 (3d Cir. 1993).  "The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies." Kinstler v. First Reliance Std. Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999).[2]

---

[1]  In the ERISA context, the "abuse-of-discretion" standard of review is used interchangeably with the "arbitrary and capricious" standard of review.  Howley v. Mellon Fin. Corp., 625 F.3d 788, 793 n.6 (3d Cir. 2010).

[2]  Under the arbitrary and capricious standard, a court may overturn an administrator's decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 (3d Cir. 2011) (citation and internal quotation marks omitted).  This deferential review "promotes efficiency by encouraging

**B.      The Plan Administrator's Decision Will Be Reviewed Using the Arbitrary and Capricious Standard**

In this case, Plaintiffs agree that the language of the Plan grants "the Plan Administrator or his delegate" discretionary authority with respect to benefits decisions.  (Doc. No. 12 at 9.) Plaintiffs also agree that Sunoco is the Plan Administrator.  (Doc. No. 14 at 4.)  They disagree, however, with one aspect of the Plan in regard to Sunoco's delegation to Brigandi.  Plaintiffs argue that the Plan does not set forth "express procedures" to support the delegation to Brigandi, which they assert ERISA requires in order for Sunoco to delegate its authority to administer the Plan.  (Id. at 4-5.)  Because the Plan lacks "express procedures" for delegation, Plaintiffs contend that the decision to deny benefits made by Sunoco's delegate, Brigandi, should be subject to the Court's de novo review.[3]  (Id. at 6.)

---

resolution of benefits disputes through internal administrative proceedings rather than costly litigation."  Conkright v. Frommert, 559 U.S. 506, 517 (2010).

By contrast, under a de novo standard of review, the court's role "'is to determine whether the administrator . . . made a correct decision.'"  Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413-14 (3d Cir. 2011) (quoting Hoover v. Provident Life & Accident Ins. Co., 290 F.3d 801, 808-09 (6th Cir. 2002)).  "'The administrator's decision is accorded no deference or presumption of correctness.'"  Id.  The court must review the record and "'determine whether the administrator properly interpreted the plan and whether the insured is entitled to benefits under the plan.'"  Id.

[3]   In support of Plaintiffs' position that the standard of review must be de novo, Plaintiffs rely on Gill v. Bausch & Lomb Supplemental Retirement Income Plan I, 1 F. Supp. 3d 72 (W.D.N.Y. 2014).  In that case, the court relied on Second Circuit precedent which stated that arbitrary and capricious review is only appropriate if an authorized party made the challenged benefits determination.  The relevant portion of Gill reads as follows:

Defendants are entitled to the deferential "arbitrary and capricious" standard of review only if an authorized party made the challenged benefits determination; if an unauthorized party made the benefits determination, the denial is reviewed under a de novo standard.  See, e.g., Sharkey v. Ultramar Energy Ltd., 703 F.3d 226, 229 (2d Cir. 1995) (holding that the de novo standard is "the standard of review applicable to a decision to revoke benefits when that decision is made by a

6

Plaintiffs' argument rests on a provision of ERISA, found at 29 U.S.C. § 1105(c)(1)(B), that permits a plan fiduciary to delegate its responsibilities.  It states as follows:

> [T]he instrument under which a plan is maintained may expressly provide for procedures . . . (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan.

Plaintiffs argue that under this provision of ERISA a plan must expressly set forth procedures for a fiduciary to delegate its fiduciary responsibilities, which would include administering the Plan.  (Doc. No. 14 at 2-6.)  Here, the Plan provides that the "Plan Administrator or his delegate has full responsibility for interpreting and administering the terms and provisions of the Plan."  (Doc. No. 1, Ex. A at 10.)  Plaintiffs claim that this language falls short of providing the express procedures required by ERISA for Sunoco to delegate its fiduciary

---

> body other than the one authorized by the procedures set forth in the benefits plan").

Gill, 1 F. Supp. 3d at 81.

As Defendant points out, Gill is distinguishable from this case.  (See June 20, 2014 Hr'g Tr. 24:18-25:15.)  In Gill, a deferred compensation plan subject to ERISA granted the "Committee on Management" discretionary authority to administer the plan.  1 F. Supp. 3d at 83.  At the time the benefits decision was made, the Committee on Management did not even exist, nor was there any indication that the Committee on Management had ever delegated its authority to administer the plan to anyone else.  Id. at 83.  As such, the benefits determination could not have been made by a party authorized by the plan to make a discretionary decision.  Therefore, the decision was subject to the court's de novo review.  Id. at 87.

Here, the parties agree that Sunoco was granted discretionary authority to administer the plan. The only dispute is whether the Plan provided "express procedures" for delegation that Plaintiffs claim are required by ERISA, 29 U.S.C. § 1105(c)(1)(B).  Gill does not address the question of whether "express procedures" for delegation are required by ERISA and, if so, what constitutes satisfactory "express procedures."  Therefore, Gill is not persuasive authority supporting Plaintiffs' position.

responsibility of administering the Plan.[4]  (Doc. No. 14 at 6.)  Without language providing

express procedures for delegation, Plaintiffs contend that Sunoco cannot delegate its fiduciary

responsibility to administer the Plan to anyone and still claim the benefit of arbitrary and

capricious review.[5]  (Id.)  Accordingly, Plaintiffs argue that the de novo standard of review is

applicable to this case.[6]

---

[4]  Plaintiffs have provided an example of language they contend shows "express procedures" for
delegation that ERISA requires.  (Doc. No. 14 at 5.)  The language comes from the plan at
issue in In re CMS Energy ERISA Litig., 312 F. Supp. 2d 898, 906-07 (E.D. Mich. 2004), and
reads as follows:

> The Board of Directors of Consumers shall appoint such persons, who may be
> Members under the Plan, as it determines at any time to act as Plan Administrator
> in all dealings under the Plan.

Id. at 906-07.

[5]  At oral argument, counsel for Plaintiffs claimed as follows:

> MR. SURKIN:  If there is any language in this plan that would allow such
> a delegation—and I don't think there is—it seems to me to be limited to this
> senior human resources vice president—I think that was the name—because that
> was the only officer they mentioned in the plan.  And they didn't do it that way.
>
> And if they don't do it that way—ERISA is a statute that requires strict
> adherence to its provisions.  And it's their burden to establish the benefit of the
> discretionary review.  If they haven't dotted all the I's and crossed all the T's,
> then review is de novo, and that's our position on this.

(June 20, 2014 Hr'g Tr. 16:5-18.)

[6]  Plaintiffs' position on the timing of ruling on the standard of review shifted after Defendant
submitted its Response in Opposition to Plaintiffs' Brief (Doc. No. 13).  In its initial Brief
(Doc. No. 12), Plaintiffs claimed that it was premature for the Court to determine the proper
standard of review until the parties had the opportunity to conduct discovery with respect to
whether Brigandi was properly granted discretionary authority to administer the Plan.  (Doc.
No. 12 at 23.)

Thereafter, Defendant attached to its responsive Brief (Doc. No. 13) an Officer's Certificate
(Ex. G), executed by Sunoco's CEO, appointing Vincent J. Brigandi as Plan Administrator of
the Plan, which states that he "may take all actions necessary to effectuate the intent of this
Officer's Certificate."  (Doc. No. 13, Ex. G)  Defendant claims that this Officer's Certificate

Defendant argues that Brigandi's appointment as Plan Administrator with discretionary authority to administer the Plan was proper pursuant to ERISA and the terms of the Plan.  (Doc. No. 19 at 1.)  Defendant contends that ERISA does not require benefits plans to provide "express procedures" for delegation of administrative authority, pointing to the permissive word "may" in ERISA.  (Id. at 3) ("[Benefit plans] may expressly provide for procedures . . . ." (quoting 29 U.S.C. § 1105(c)(1)(B) (emphasis added)).

In support of its position, Defendant has produced the Plan, a Board Resolution, and an Officer's Certificate that together show how Sunoco delegated to Brigandi discretionary authority to administer the Plan.  (See Doc. No. 13-1, Ex. A; Doc. No. 19-1, Exs. A, B.) Defendant describes the delegation as follows:

> The Plan names Sunoco as the Plan Administrator, and unambiguously grants it the power to delegate its authority to interpret the Plan in two separate provisions. Specifically, the Plan states:
>
> > The Plan Administrator or his delegate has full responsibility for interpreting and administering the terms and provisions of the Plan. All interpretations, determinations and decisions of the Plan Administrator (or its delegate) in respect to any matter shall be final, conclusive and binding upon the Company, any employer, participants, and all other persons claiming an interest in the Plan. (Doc. No. 13-1, Ex. A at 10 (emphasis added).)

---

"completely refutes Plaintiffs' contentions regarding the propriety of Vincent Brigandi acting as Plan Administrator."  (Doc. No. 13 at 11.)

Plaintiffs counter in their Reply Brief (Doc. No. 14) that the Officer's Certificate does not establish that Brigandi was granted discretionary authority pursuant to an express procedure laid out in the Plan, as required by ERISA, 29 U.S.C. § 1105(c)(1)(B).  Plaintiffs then argue that since Defendant has proffered its supporting evidence, which fails to show an express delegation, no additional discovery is required and the Court can now rule that the de novo standard of review applies.  (Id. at 6 n.2.)  Defendant agrees that based on the current record the Court can rule on which standard of review applies here.  (Doc. No. 19 at 10.)  Thus, both parties agree that the Court can rule on the proper standard of review at this time.

> Pursuant to this delegation provision, the Sunoco Board of Directors delegated its authority under the Plan to the Company's CEO, Brian McDonald, by resolution in 1993.[7]  (Doc. No. 19-1, Ex. A.)  Then, on March 1, 2012, the CEO executed an Officer's Certificate delegating the discretionary authority to Vince Brigandi.[8]  (Id., Ex. B.)  The 2012 Delegation specifically assigns Mr. Brigandi the role of "Plan Administrator."  (Id.)  Pursuant to this delegation, Mr. Brigandi made claim determinations for the Plan, including those at issue in this matter.  (See Doc. No. 13-3, Exs. D, F (claim determination letters signed by Brigandi).)

(Doc. No. 19 at 2-3.)

The Court is persuaded that Defendant has produced enough evidence to show that Sunoco delegated its authority to administer the Plan to Brigandi.  The Plan identifies Sunoco as the Plan Administrator and states that the "Plan Administrator or his delegate has full responsibility for interpreting and administering the terms and provisions of the Plan."  (Doc. No. 1, Ex. A at 10.)  Plaintiffs have cited no authority that supports their position that the language in the Plan is insufficient to allow Sunoco to delegate its discretionary authority to administer the Plan.

In any event, ERISA does not require language of express delegation as Plaintiffs assert. As a general rule of statutory construction, the word "may" is permissive, whereas "shall" is mandatory.  LeMay v. U.S. Postal Serv., 450 F.3d 797, 799 (8th Cir. 2006) (citing Anderson v. Yungkau, 329 U.S. 482, 485 (1947)).  If Congress intended that express procedures for delegation be mandatory, it would not have used the word "may" in the pertinent provision of

---

[7] The Board Resolution is set forth in full supra, Part II.

[8] The Officer's Certificate reads, in relevant part, as follows:

> FURTHER, Vincent J. Brigandi is hereby appointed Plan Administrator of the Plan; and

> FURTHER, the Plan Administrator may take all actions necessary to effectuate the intent of this Officer's Certificate.

 (Doc. No. 19-1, Ex. B.)

ERISA, 29 U.S.C. § 1105(c)(1)(B).  In addition, Plaintiffs' Union was involved in the

negotiations that established the Plan, and could have bargained for a more detailed delegation

procedure to be included in the Plan.  (Doc. No. 1 ¶ 3.)  As such, Sunoco's delegation of

discretionary authority to administer the Plan to Brigandi was proper, and his decision to deny

severance benefits will be subject to the arbitrary and capricious standard of review.[9]

---

[9]  In their Reply Brief (Doc. No. 14), Plaintiffs argue that because the 1993 Board Resolution
was not specifically mentioned in the Plan, it cannot be the basis of Sunoco's delegation of
authority over the Plan to the CEO.  (See Doc. No. 14 at 5-6 (citing In re New Valley Corp.,
89 F.3d 143, 149 (3d Cir. 1996); Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1163-64
(3d Cir. 1990); Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1009 n.9 (3d
Cir. 1980)).  The cases Plaintiffs cite are factually distinct and do not support this position.  In
re New Valley Corp. and Hozier discuss the requirement that an ERISA plan must be in
writing.  In re New Valley, 89 F.3d at 149; Hozier, 908 F.3d at 1163-64.  Mellon Bank
discusses the parol evidence rule, which bars the introduction of extrinsic evidence to vary the
terms of a fully-integrated contract.  619 F.3d at 1009 n.9.  An ERISA plan is such a contract.
In this case, there is no dispute that the Plan is in writing and that it states that the "Plan
Administrator or its delegate" has discretionary authority to administer the Plan.  Also, the
parol evidence rule is not at issue here because Defendant is not seeking to vary this term of
the Plan.  As discussed, the issue here is whether ERISA requires more specific procedures for
delegation than the Plan provides.

In addition, in the same section of their Reply Memorandum, Plaintiffs argue that the Plan
grants Sunoco's senior human resources officer the "sole power" to amend or terminate the
Plan.  (Doc. No. 14 at 5-6.)  Plaintiffs contend that this grant of authority to the senior human
resources officer supersedes the 1993 Board Resolution delegating this same authority to the
CEO.  (Id.)  Plaintiffs claim that the 1993 Board Resolution therefore is void with respect to
the Plan.  (Id.)  Plaintiffs base their contention on the following Plan language:

> The Company expects to continue the Plan, but reserves the right to amend or
> terminate, by action of its senior human resources officer, at any time.

(Doc. No. 1-1 at 12.)

The Court is not convinced that this Plan language grants the senior human resources officer
the "sole discretion" to amend or terminate the Plan.  Nevertheless, the issue in this case is not
who properly possesses the authority to amend or terminate the Plan.  The issue is who has the
authority to administer the Plan.  Thus, this argument does not support Plaintiffs' position that
the delegation of discretionary authority to administer the Plan to Brigandi was improper.

## IV.    SCOPE OF DISCOVERY

### A.    Discovery Beyond the Administrative Record in ERISA Cases

In Metropolitan Life Ins. Co. v. Glenn, the U.S. Supreme Court stated that if "'a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.'" 554 U.S. 105, 111 (2008) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).  The Court instructed that "the significance of the conflict of interest factor will depend upon the circumstances of the particular case."  554 U.S. 105, 106 (2008).  The Court elaborated as follows:

> [A conflict] should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration.  It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

Id. at 117.

In Howley v. Mellon Financial Corp., the Third Circuit interpreted Glenn to mean that a court may consider evidence of a plan administrator's alleged conflict of interest that is not found in the administrative record.  See 625 F.3d 788, 793-94 (3d Cir. 2010).  The Howley court reasoned as follows:

> It is true that courts generally must base their review of an administrator's decision on the materials that were before the administrator when it made the challenged decision.  Materials that the parties failed to put before the administrator are not usually relevant to the inquiry of whether the administrator abused its discretion.  Thus, under most circumstances, "the record for arbitrary-and-capricious review of ERISA benefits denial is the record made before the plan administrator, and cannot be supplemented during litigation."  Kosiba v. Merck & Co., 384 F.3d 58, 67 n.5 (3d Cir. 2004).

However, this rule is not without exceptions.  A court may certainly "consider evidence of potential biases and conflicts of interest that is not found in the administrator's record."  Id.; see also Burke v. Pitney Bowes Inc. Long-Term Disability Plan, 544 F.3d 1016, 1028 (9th Cir. 2008) ("[T]he district court may consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest." (internal quotation marks omitted)).  The necessity for this exception is obvious.  A plan participant may be unaware of information relating to an administrator's conflict until well after the administrative process has ended, and a conflicted administrator, especially one whose decision-making has been affected by that conflict, is not at all likely to volunteer that information.  To allow an administrator the benefit of a conflict merely because it managed to successfully keep that conflict hidden during the administrative process would be absurd.

Although we adopted this exception prior to the Supreme Court's decision in Glenn, it remains equally appropriate after Glenn.  Glenn directs a court to consider a conflict of interest as a factor in its analysis, and to afford that factor greater importance, perhaps determinative importance, where the evidence suggests a greater likelihood that it affected the decision to deny benefits.  128 S. Ct. at 2351.  For this legal standard to be meaningful, courts plainly must be willing to consider evidence relative to "the nature, extent, and effect on the decision-making process of any conflict of interest" revealed during the litigation process.  Burke, 544 F.3d at 1028.

Howley, 625 F.3d at 793-94.

In accordance with Glenn and Howley, courts in the Third Circuit have permitted limited discovery into an ERISA plan administrator's potential conflict of interest.  See, e.g., Preitz v. Am. Airlines, Inc., Civ. No. 11-44, 2015 WL 221065, at *2 (E.D. Pa. Jan. 14, 2015); Charles v. UPS Nat'l Long Term Disability Plan, Civ. No. 12-6223, 2013 WL 6080163, at *2 (E.D. Pa. Nov. 19, 2013); Lucas v. Liberty Life Assur. Co. of Boston, Civ. No. 11-4417, 2011 WL 6196720, at *2-3 (E.D. Pa. Dec. 12, 2011); Rhodes v. Principal Fin. Grp., Inc., Civ. No. 10-290, 2010 WL 4867618, at *2 (M.D. Pa. Nov. 23, 2010); Sivilingam v. Unum Provident Corp., 735 F. Supp. 2d 189, 196 (E.D. Pa. 2010); Dandridge v. Raytheon Co., Civ. No. 08-4793, 2010 WL 376598, at *4 (D.N.J. Jan. 26, 2010).

Even where a conflict is presumed, discovery may be necessary to determine how the conflict affected the plan administrator's decision.  In Charles v. UPS Nat'l Long Term

Disability Plan, the court addressed this issue and permitted discovery beyond the administrative

record:

> [Defendant] argues that because the conflict is presumed no other discovery
> related to this issue is necessary.  This is not true.  Even under the more
> deferential arbitrary and capricious standard, this court will still be required to
> determine how, if at all, this conflict may have affected the benefits determination
> in deciding whether the decision was an abuse of discretion.  This information
> would not necessarily be apparent from the administrative record, as plaintiff
> points out.

Civ. No. 12-6223, 2013 WL 6080163, at *2 (E.D. Pa. Nov. 19, 2013).

Any discovery, however, "must be circumscribed so as to preserve ERISA's goal of

providing an inexpensive and expeditious means of resolving benefit disputes."  Sivalingam v.

Unum Provident Corp., 735 F. Supp. 2d 189, 196 (E.D. Pa. 2010).  A plaintiff should only be

allowed to conduct discovery into a plan administrator's conflict of interest.[10]  Id. at 195-96.

Discovery into the merits of the plan administrator's decision should not be permitted.  Id.

> **B.      Plaintiffs Will Be Permitted to Conduct Limited Discovery Only into the
> Plan Administrator's Potential Conflict of Interest**

In this case, Plaintiffs seek discovery into the Plan Administrator's potential conflict of

interest.  (Doc. No. 12 at 23.)  Defendant agrees that, on the surface, there is a conflict of interest

---

[10] Two types of conflict of interest have been noted: structural and procedural.  See Sivalingam
v. Unum Provident Corp., 735 F. Supp. 2d 189, 195 (E.D. Pa. 2010). "'[S]tructural conflicts'
relate to financial incentives inherent in a plan's design, such as where the same entity both
funds and administers the benefits plan."  Id.  "A 'procedural' conflict focuses on how the
administrator treated a particular claimant and may arise from case-specific factors and
irregularities."  Atkins v. UPMC Healthcare Benefits, Civ. No. 13-520, 2013 WL 6587170, at
*3 (W.D. Pa. Dec. 16, 2013).  Evidence of procedural conflict includes: "(1) reversal of
position without additional medical evidence; (2) self-serving selectivity in the use and
interpretation of physicians' reports; (3) disregarding staff recommendations that benefits be
awarded; and (4) requesting a medical examination when all of the evidence indicates
disability."  Mullica v. Minnesota Life Ins. Co., Civ. No. 11-4034, 2013 WL 5429295, at *2
(E.D. Pa. Sept. 27, 2013) (citation and internal quotation marks omitted).  Although the instant
case before this Court does not involve medical evidence, the points in Mullica provide some
guidance on what may constitute a procedural conflict in other circumstances.

because Sunoco both administers the Plan and pays the benefits.  (Doc. No. 13 at 14).  Given this

conflict, Defendant contends that discovery beyond the administrative record is not required.

(Id. at 13-14.)  This position, however, is not persuasive.

First, the weight of authority supports allowing discovery into a plan administrator's

potential conflict of interest, even when it is agreed that a conflict is evident.  The reason for

allowing such discovery is because evidence on the conflict must be given meaningful

consideration by a district court in deciding whether the actions of the plan administrator were an

abuse of discretion.  As noted above in Glenn, the U.S. Supreme Court held that a plan

administrator's conflict of interest "must be weighed as a factor in determining whether there is

an abuse of discretion."  554 U.S. at 111.  In Howley, the Third Circuit stated that "[f]or this

legal standard to be meaningful, courts plainly must be willing to consider evidence relative to

the 'nature, extent, and effect on the decision-making process of any conflict of interest' revealed

during the litigation process."  625 F.3d at 794 (quoting Burke, 544 F.3d at 1028).  Accordingly,

"[a] court may certainly 'consider evidence of potential biases and conflicts of interest that is not

found in the administrator's record.'"  Id. (quoting Kosiba v. Merck & Co., 384 F.3d 58, 67 n.5

(3d Cir. 2004)).  In line with Howley, the court in Charles v. UPS Nat'l Long Term Disability

Plan allowed discovery into a conflict of interest, even though it was presumed, because the

"court will still be required to determine how, if at all, this conflict may have affected the

benefits determination in deciding whether the decision was an abuse of discretion.  This

information would not necessarily be apparent from the administrative record."  2013 WL

6080163, at *2.[11]

---

[11] See also Preitz v. Am. Airlines, Inc., Civ. No. 11-44, 2015 WL 221065, at *2 (E.D. Pa. Jan. 14, 2015) ("[A]n ERISA claimant may be granted limited discovery beyond the administrative record for the purpose of examining alleged conflicts of interest."); Lucas v. Liberty Life

The Court is persuaded that the need for discovery into the "nature, extent, and effect" of

the Plan Administrator's conflict is not eliminated merely because Defendant has agreed that a

conflict exists. In order for the record to be fully developed on the conflicts issue, the Court

must permit discovery beyond the administrative record. "Otherwise, [the Court] would be

handicapped in analyzing all the factors [the Court] must consider in deciding whether an abuse

of discretion has occurred." Sivilingam, 735 F. Supp. 2d at 196.

Second, Defendant relies on cases that do not persuade the Court that discovery is

unnecessary where a conflict of interest is presumed. See Atkins v. UPMC Healthcare Benefits

Trust, Civ. No. 13-520, 2013 WL 6587170, at *3 (W.D. Pa. Dec. 16, 2013); Muccino v. Long

Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson, Civ. No.

11-3641, 2012 U.S. Dist. LEXIS 80327, at *29 (D.N.J. June 12, 2012); Shvartsman v. Long

Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson, Civ. No.

11-3643, 2012 U.S. Dist. LEXIS 80328, at *27-28 (D.N.J. June 11, 2012).

In Atkins, plaintiff alleged that both the plan administrator and medical professionals

involved in the decision to deny her claim for benefits had a structural conflict of interest, and

sought discovery into the conflicts. 2013 WL 6587170, at *1. She also sought discovery into

---

Assur. Co. of Boston, Civ. No. 11-4417, 2011 WL 6196720, at *2-3 (E.D. Pa. Dec. 12, 2011)
("An ERISA plaintiff is not entitled to take discovery on the merits but may do so regarding
conflicts of interest."); Rhodes v. Principal Fin. Grp., Inc., Civ. No. 10-290, 2010 WL
4867618, at *2 (M.D. Pa. Nov. 23, 2010) ("The court agrees with our sister districts that,
insofar as we must evaluate the potential conflict of interest created by Principal as
simultaneous claim evaluator and claim payor in determining whether Principal abused its
discretion, additional discovery by [plaintiff] is warranted."); Sivilingam v. Unum Provident
Corp., 735 F. Supp. 2d 189, 196 (E.D. Pa. 2010) ("Discovery is the only way the record can be
fully developed on the conflicts issue. Otherwise, we would be handicapped in analyzing all
the factors we must consider in deciding whether an abuse of discretion has occurred.");
Dandridge v. Raytheon Co., Civ. No. 08-4793, 2010 WL 376598, at *4 (D.N.J. Jan. 26, 2010)
("Thus, discovery beyond the administrative record is permissible if such discovery is directed
toward uncovering the extent to which a structural conflict record has morphed into an actual
conflict that could have influenced the administrator's discretionary decision.").

several alleged procedural conflicts.  Id. at 2.  Defendants stipulated that the plan administrator

had a structural conflict because it both evaluated and paid the claims for benefits.  Id.  However,

Defendants disputed that the medical professionals had a structural conflict.  Id.  The court

allowed discovery into the medical professionals' alleged structural conflict and into alleged

procedural conflicts, but did not permit discovery into the plan administrator's structural conflict.

Id. at *3.  The court stated that "no discovery is necessary" into the plan administrator's

structural conflict because defendants have "stipulated that it exists."  Id.  No other reason is

given for not allowing discovery into the structural conflict.

The two other decisions relied on by Defendant, Muccino and Shvartsman, are almost

identical opinions that were issued by the same magistrate judge on the same day and concern

the same Johnson & Johnson disability benefits plan.  Muccino, 2012 U.S. Dist. LEXIS 80327,

at *15; Shvartsman, 2012 U.S. Dist. LEXIS 80328, at *15.  In each case, plaintiffs sought

discovery into alleged structural and procedural conflicts of interest.  Muccino, at *4;

Shvartsman, at *4.  The court first held that the plan administrator did not have a structural

conflict of interest, and therefore discovery beyond the administrative record would not be

permitted.  Muccino, at *28; Shvartsman, at *26.  The court then held that even if the plan

administrator did have a structural conflict, the court could evaluate it based on documents in the

administrative record.  Muccino, at *29; Shvartsman, at *28.

In Muccino and Shvartsman, the court also denied discovery into plaintiffs' alleged

procedural conflicts.  In each case, plaintiffs alleged that the letter denying their benefits claim

was "ghostwritten by an anonymous person," that defendant withheld the identities of reviewers

and fiduciaries, and that a nurse's review of their claim was "cloaked in secrecy."  Muccino, at

*32-34; Shvartsman, at *30-31.  Nevertheless, the court in each case concluded that "nothing in

the administrative record, or in Plaintiff's brief, raises 'a reasonable suspicion of [Defendant's] misconduct.'" Muccino, at *31; Shvartsman, at *30 (citation omitted). The court in Muccino and Shvartsman therefore held that plaintiffs had not presented "a good faith basis for alleging bias, conflict of interest, or irregularity in the Defendant's decision-making process." Muccino, at *31; Shvartsman, at *30.

This Court does not agree with the holding in Atkins that discovery into a structural conflict is not necessary when it is presumed, nor does it agree with the statements in Muccino and Shvartsman that a structural conflict can be evaluated solely from documents in the administrative record. In Glenn, the U.S. Supreme Court stated that "the significance of the conflict of interest factor will depend upon the circumstances of the particular case." 554 U.S. 105, 106 (2008). The Court then explained that such a conflict will "prove more important (perhaps of great importance)" where, for instance, the "administrator has a history of biased claims administration." Id. at 117. A conflict will "prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and promote accuracy." Id. A mere stipulation that a conflict exists does not permit this Court to thoroughly evaluate the conflict in accordance with Glenn. The type of information Glenn instructs courts to consider would not "necessarily be apparent from the administrative record." Charles, 2013 WL 6080163, at *2. As stated in Siviligam, "[d]iscovery is the only way the record can be fully developed on the conflicts use. Otherwise, [the Court] would be handicapped in analyzing all the factors [the Court] must consider in deciding whether an abuse of discretion has occurred." 735 F. Supp. 2d at 196. Accordingly, this Court will permit discovery into the Plan Administrator's structural conflict of interest, even though Defendant has stipulated that the conflict exists.

In addition, the Court does not agree that the plaintiffs in <u>Muccino</u> and <u>Shvartsman</u> failed to establish a "good faith" allegation of a procedural conflict.  As noted above, the court in those cases held that plaintiffs had failed to establish a "good faith basis" for alleging procedural irregularities because there was "nothing in the administrative record, or in [p]laintiff's briefs, which raises 'a reasonable suspicion of [Defendant's] misconduct.'"  <u>Muccino</u>, at *31; <u>Shvartsman</u>, at *30 (citation omitted).  Plaintiffs did allege that the letter denying their benefits claim was "ghostwritten by an anonymous person," that defendant withheld the identities of reviewers and fiduciaries, and that a nurse's review of their claim was "cloaked in secrecy." <u>Muccino</u>, at *32-34; <u>Shvartsman</u>, at *30-31.  These allegations are sufficient to establish a "good faith" showing of a procedural conflict.

This Court is persuaded that evidence of procedural conflicts—like evidence of structural conflicts—would "not necessarily be apparent from the administrative record." <u>Charles</u>, 2013 WL 6080163, at *2.  As stated by the Third Circuit in <u>Howley</u>, a conflict will often only be revealed through discovery:

> The necessity [of permitting discovery] is obvious.  A plan participant may be unaware of information relating to an administrator's conflict until well after the administrative process has ended, and a conflicted administrator, especially one whose decision-making has been affected by that conflict, is not at all likely to volunteer that information.  To allow an administrator the benefit of a conflict merely because it managed to successfully keep that conflict hidden during the administrative process would be absurd.

625 F.3d 788, 794 (3d Cir. 2010).  This reasoning in <u>Howley</u> convinces the Court that plaintiffs should only be required to make a "minimal showing of bias or irregularity that could have impacted the administration of the claim" to be permitted to conduct discovery into procedural conflicts.  <u>Dandridge v. Raytheon Co.</u>, Civ. A. No. 08-4793, 2010 WL 376598, at *6 (D.N.J. Jan. 26, 2010).

In this case Plaintiffs have alleged that Brigandi, the Plan Administrator, may not have made the decision to deny the claim for benefits.  (Doc. No. 12 at 20.)  In support of this allegation, Plaintiffs contend that letters written by Sunoco's outside labor counsel and Sunoco's Assistant General Counsel are very similar to the letters signed by Brigandi that denied Plaintiffs' claim for benefits.  (Id.)  Plaintiffs assert that there is a procedural conflict if these attorneys, instead of Brigandi, made the decision to deny the benefit claim. (Id.)  This Court is persuaded that Plaintiffs have made a "minimal showing of bias or irregularity" sufficient to establish a "good faith" allegation of a procedural conflict.  Accordingly, the Court will permit Plaintiffs to conduct discovery into the Plan Administrator's alleged structural and procedural conflicts of interest.

## V.    CONCLUSION

For the reasons stated above, the arbitrary and capricious standard of review will be used in this case, and Plaintiffs will be permitted to conduct limited discovery only into the Plan Administrator's conflict of interest.  An appropriate Order follows.