## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAUL L. FELKER, WILLIAM SCHRADER,　　:
MICHAEL McCORMICK, ANTHONY M.　　　:
KOZLOWSKI, WILLIAM T. DUNBAR,　　　　:
EDWARD R. MACIEJEWSKI, BRIAN J.　　　:
KELSO, WILLIAM VANDERGRIFT, PAUL D.　:
JENNINGS, DARRYL T. BRANT, FRED J.　　:
SOBOTINCIC, ROBERT A. FORTE, JR.,　　　:
ANDREW R. GROSS, EDWIN J. ERIKSEN,　　:
ANTHONY C. REILLY, FRANK T. GANNON,　:
JOHN P. GANNON, BRIAN D.　　　　　　:
BARROWCLIFF, LEO RUSHTON,　　　　　:
DEONARINE JAWAHIR, CARL HOLDERER,　:
ROBERT A. GRANGE, and PAUL C. MILLER,　:　　CIVIL ACTION NO. 2:13-CV-07101-
　　　　　　　　　　　　　　　　:　　JHS
　　　　　Plaintiffs,　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
USW LOCAL 10-901, USW LOCAL 10-901　　:
(SU) AND USW LOCAL 10-901 (NE) MARCUS :
HOOK REFINERY WORKERS　　　　　　:
INVOLUNTARY TERMINATION PLAN,　　　:
　　　　　　　　　　　　　　　　:
　　　　　Defendant.　　　　　　　:

## MEMORANDUM OF LAW IN SUPPORT OF THE
## MOTION TO STRIKE OF DEFENDANT
## USW LOCAL 10-901, USW LOCAL 10-901 (SU) AND USW LOCAL 10-901 (NE)
## MARCUS HOOK REFINERY WORKERS INVOLUNTARY TERMINATION PLAN

On the Brief:
Brian D. Pedrow
Mary Cate Gordon

DMEAST #22488428 v6

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY.......................................... 1

III.    DISCUSSION ..................................................................................... 8

        A.      Standard of Review.................................................................... 8

        B.      The Plaintiffs' Offer Additional Exhibits in an Attempt to Impermissibly
                Augment the Administrative Record .................................................. 10

        C.      The Sections of the Verified Statements Upon Which Plaintiffs Rely
                Contain Inadmissible Hearsay, and Even Hearsay within Hearsay. ..................... 20

        D.      The Verified Statements Contain Inadmissible Legal Argument and
                Therefore Should be Stricken from the Record. .................................... 22

IV.     CONCLUSION..................................................................................... 24

DMEAST #22488428 v6

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Carey v. Beans,
    500 F. Supp. 580 (E.D. Pa. 1980) ...................................................................................20, 22

Coleman v. Cerski,
    No. CIV.A. 3:04-CV-1423, 2007 WL 2908266 (M.D. Pa. Oct. 4, 2007) ...............................8

Elms v. Prudential Ins. Co. of Amer.,
    No. 06-5127, 2008 WL 4444269 (E.D. Pa. Oct. 2, 2008) .............................................. passim

Helton v. AT&T, Inc.,
    709 F.3d 343 (4th Cir. 2013) ...............................................................................................18

Howley v. Mellon Fin. Grp.,
    625 F.3d 788 (3d Cir. 2010)..................................................................................................10

Keating v. Bucks Cnty. Water & Sewage Auth'y,
    No. 99-1584, 2000 WL 1888770 (E.D. Pa. Dec. 29, 2009).............................................20, 21

Kosiba v. Merck & Co.,
    384 F.3d 58 (3d Cir. 2004)..................................................................................................1, 10

Majeski v. Metro. Life Ins. Co.,
    590 F.3d 478 (7th Cir. 2009) ...............................................................................................14

Meade v. Nat'l City Corp. Welfare Plan,
    394 F. App'x 308 (7th Cir. 2010) ........................................................................................14

Miller v. Am. Airlines,
    632 F.3d 837 (3d Cir. 2011)..................................................................................................10

Mitchell v. Eastman Kodak Co.,
    113 F.3d 433 (3d Cir. 1997)..................................................................................................10

Murray v. IBEW Local Union No. 98,
    No. 10-3852, 2011 WL 1883168 (E.D. Pa. May 17, 2011)..................................................8, 9

O'Malley v. Sun Life. Assur. Co. of Am.,
    No. 04-5540, 2006 WL 182099 (D.N.J. Jan. 23, 2006)....................................................19, 20

O'Sullivan v. Metro. Life Ins. Co.,
    114 F. Supp. 2d 303 (D.N.J. 2000) ........................................................................11, 12, 20

Post v. Hartford Ins. Co.,
    501 F.3d 154 (3d Cir. 2007)......................................................................12, 13, 14, 17

DMEAST #22488428 v6

iii

United States v. Reilly,
33 F.3d 1396 (3d Cir. 1994)..................................................................................................20

York Int'l Corp. vs. Liberty Mut. Ins. Co.,
No. 1:10-CV-0692, 2015 WL 4162981 (M.D. Pa. July 9, 2015) ....................................22, 23

**RULES**

Fed. R. Civ. P. 56(c)(4)........................................................................................................1, 8

Fed. R. Civ. P. 56(e) .................................................................................................................8

DMEAST #22488428 v6

## I.    PRELIMINARY STATEMENT

Defendant USW Local 10-901, USW Local 10-901 (SU) and USW Local 10-901 (NE) Marcus Hook Refinery Workers Involuntary Termination Plan ("Defendant" or "the Plan"), by and through its undersigned counsel, hereby submits the following memorandum of law in support of its Motion to Strike.  This Court should grant Defendant's Motion for three reasons: First, recognizing that the case law is clear that when a court in this district applies the arbitrary and capricious standard of review, it is inappropriate for the administrative record to be supplemented during the course of litigation, see e.g., Kosiba v. Merck & Co., 384 F.3d 58, 67 n.5 (3d Cir. 2004), this Court, in its April 23, 2015 Order (Doc. 21), limited the scope of admissible extra evidence to that developed in the course of discovery on the narrow issue of whether the Plan Administrator operated under a conflict of interest.  Thus, because Plaintiffs' Exhibits 6 through 11, 13, 15, and 69 through 71 do not relate to this limited conflict of interest issue, they are inadmissible.  Second, the Verified Statements on which Plaintiffs rely at summary judgment are inadmissible pursuant to Federal Rule of Civil Procedure Rule 56(c)(4) because they are rife with inadmissible hearsay.  Third, the Verified Statements contain impermissible and improper legal arguments.  Accordingly, this Court should grant Defendant's Motion to Strike.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

At issue in this case is a claim for severance benefits under the Plan, which is an employee welfare plan governed by the Employee Retirement Income Security Act ("ERISA"). Plaintiffs contend that they are owed severance benefits under the Plan.  Defendant counters that the Plaintiffs did not meet the Plan requirements to qualify for benefits.

1

Upon the decision to idle the main processing units at the Marcus Hook Refinery, the Union and Sunoco engaged in effects bargaining which culminated in the Settlement Agreement reached between Sunoco, Inc. (R&M) and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, and its Local 10-901, 10-901(SU), 10-901(NE) (the "Union") and their successors for the Sunoco, Inc., (R&M)'s Marcus Hook Refinery (the "Settlement Agreement").  The Settlement Agreement included a provision for Severance Pay and Benefits, which resulted in the collectively-bargained Plan at issue.  (Attached as Exhibit A).

The overarching purpose of the Plan, as expressly stated therein, is "to alleviate financial hardships which may be experienced by employees of the Company whose employment is terminated in connection with the Company's idling of the main processing units at its Marcus Hook Refinery."  (Id. at D-0030).  In other words, the Plan is intended to provide compensation to participants who lose their livelihood as a result of being laid off.  It is undisputed here that the Plaintiffs – members of the Mobile Work Force ("MWF"), a group of maintenance employees who were employees of the Marcus Hook Refinery but also worked at Sunoco's Philadelphia Refinery – never suffered such a hardship, but rather were transferred from Sunoco to the purchaser of the Philadelphia Refinery where they already were working.

Section II of the Plan explains that employees who refuse to accept an equivalent position with Sunoco or affiliate companies are not eligible for benefits.  A parenthetical to this provision addresses the MWF and notes that the provision denying benefits to employees who refuse to accept an equivalent position "does not apply to employees who are part of the Mobile Work Force . . . and who are transferred to a position at the Company's Philadelphia Refinery for a **limited period of time**."  (Id. at D-0031) (emphasis added).

2

On July 2, 2012, Sunoco entered into a Refining Contribution Agreement with Philadelphia Energy Solutions LLC and Carlyle PES, L.L.C., which provided for Sunoco's contribution of the assets of the Philadelphia Refinery to a joint venture with Philadelphia Energy Solutions LLC ("PES") in which PES is responsible for the operations of the Philadelphia Refinery.  (Attached, in relevant part, as Exhibit B).  Pursuant to this transaction, MWF employees were hired by PES on September 7, 2012 to continue working, on a permanent basis, at the Philadelphia Refinery.  It is undisputed that no member of the MWF suffered any employment loss in connection with the transfer of their employment pursuant to the PES deal.

Importantly, the Plan expressly grants discretion to the Plan Administrator. Specifically, the Plan states that:

> The Plan Administrator or his delegate has full responsibility for interpreting and administering the terms and provisions of the Plan. All interpretations, determinations and decisions of the Plan Administrator (or its delegate) in respect to any manner shall be final, conclusive and binding upon the Company, any employer, participants and all other persons claiming an interest in the Plan.

(Ex. A at D-00038).  As this Court already has ruled, this grant of discretion requires the application of the arbitrary and capricious standard of review and mandates that discovery in this matter be limited to the administrative record.   (Judge Slomsky Decision of April 23, 2015, Doc. 20, attached as Exhibit C).

On October 22, 2012 the Union made a formal claim for benefits under the Plan on behalf of the MWF employees who are the plaintiffs in this case.  (Attached as Exhibit D). The Plan Administrator, in accordance with the discretion granted to him by the Plan, made a full and fair review of this claim and issued a decision on January 22, 2013 denying the claim for benefits in accordance with the terms of the Plan. (Attached as Exhibit E).  Benefits were denied for the following reasons:

3

DMEAST #22488428 v6

1.      The Plan (in both Sections I and II) provides severance for employees whose employment is terminated in connection with the Company's idling of the main processing units at the Marcus Hook Refinery.  The MWF employees were permanently hired by PES in connection with Sunoco's contribution of the assets of the Philadelphia Refinery to a joint venture with PES.  The MWF experienced a change in employment as a result of the Refinery Contribution Agreement with PES, *not* the idling of the main processing units at the Marcus Hook Refinery.  Because members of the MWF were not terminated from employment in connection with the idling of main processing units at the Marcus Hook Refinery, they did not meet the initial eligibility threshold under the Plan and therefore were not entitled to severance benefits.

2.      The MWF's contention that they are entitled to benefits under Section II of the Plan, which provides that because the members of the MWF were not specifically excluded from participation they were entitled to benefits, is incorrect.  Because the MWF failed to meet the initial eligibility threshold under the Plan, the eligibility exclusions of Section II are inapplicable.

3.      Even if MWF members satisfied the initial eligibility conditions, the eligibility exclusions for employees who refuse to accept, whether with Sunoco or any of its affiliate companies, assignment to an equivalent position or a change in work location, applies to members of the MWF who were assigned to the Philadelphia Refinery.  The MWF exception to the eligibility exclusion only applies to MWF members who were transferred to the Philadelphia Refinery for a limited period of time.  Once PES agreed with the Union that it would offer continuous employment to the MWF employees, Sunoco's assignment of these employees to the Philadelphia Refinery became permanent.  In fact, the Contribution Agreement between Sunoco and PES limited Sunoco, with few exceptions, from taking adverse employment action with respect to these employees, including transferring them back to the Marcus Hook Refinery or laying them off.  Moreover, PES' continuing employment of the MWF employees at the Philadelphia Refinery is not for a limited period of time, and the eligibility exclusion of Section II applies without exception, rendering MWF employees ineligible for benefits under the Plan.

4.      The Settlement Agreement was designed to protect members of the MWF should they be transferred to the Philadelphia Refinery for a short period of time, asked to return to the Marcus Hook Refinery, and then laid off as a result of the idling of the main processing units at the Marcus Hook Refinery.  Sunoco did not want MWF employees to be negatively impacted by a temporary assignment to the Philadelphia Refinery if they were ultimately going to be terminated in connection with the idling of the main processing units of the Marcus Hook Refinery.  The Settlement Agreement provides that only MWF employees who receive two weeks' notice of a layoff date would be eligible to receive enhanced severance benefits at the time of layoff.  MWF employees assigned to the Philadelphia Refinery never received any notice of lay off, nor were they laid off.

4

DMEAST #22488428 v6

The Plan is clear that employees who were not terminated in connection with the idling of the main processing units at the Marcus Hook Refinery were not eligible for severance benefits.

5.   Members of the MWF had an opportunity to elect to terminate employment with Sunoco in February 2012 and receive severance benefits under the Plan at that time.  The MWF employees who are plaintiffs in this action instead elected to continue their employment with Sunoco at the Philadelphia Refinery, which allowed them to receive the same benefits as Local 10-1 employees when PES commenced operation of the Refinery, including continued employment at the Refinery after the closing date.

In the January 22, 2013 claim denial letter, the Plan Administrator informed Plaintiffs of their ability to request a review of the claim and to submit additional documents and comments in support of this request:

> While you may appeal this decision (as described below) and submit additional materials in support of the members of the MWF's claim for benefits, we are not aware of any specific materials that you must produce to perfect such claim.
>
> Within sixty (60) days of receipt of this letter, you may file a written request for a review of the claim denial.  In support of such request, you may review pertinent documents and/or submit issues and comments in writing.  The written appeal should specify the benefit being claimed, the basis for the appeal and any other pertinent data or information, and should be submitted to my attention at the address above.

(Id. at D-00010).

On March 13, 2013, the Union requested a review of the Plan Administrator's denial of benefits.  (Attached as Exhibit F).  On May 16, 2013 the Plan Administrator upheld the denial of benefits, again explaining that the MWF employees ended their employment with Sunoco in connection with the joint venture with PES rather than in connection with the idling of the main processing units of the Marcus Hook Refinery, and therefore were not eligible for benefits under the Plan.  (Attached as Exhibit G).  The Plan Administrator also noted that the MWF employees' employment at the Philadelphia Refinery with PES was not for a limited

5

DMEAST #22488428 v6

period of time, as required under the MWF exception to the eligibility exclusions in Section II of the Plan, thereby excluding MWF members from benefits.  In his letter upholding the denial of benefits, the Plan Administrator stated that "no similarly situated employee received benefits in connection with Sunoco's contribution of the assets of the Philadelphia Refinery to PES. . ." (Id.).

In his decision to deny benefits and subsequent decision to uphold the denial, the Plan Administrator gathered salient facts and considered relevant documents.  The documents that were considered by the Plan Administrator were previously submitted to the Court by the Defendant on August 10, 2015.  These documents included:  the claim letter, the letter denying benefits, the appeal letter, the letter upholding the decision to deny benefits, the Plan, the Settlement Agreement, a Memorandum of Understanding between Philadelphia Energy Solutions and the Union, and the Contribution Agreement.

On May 1, 2014, this Court held a pretrial conference with counsel for parties. (Doc. 9).  After the conference, the Court ordered the parties to file briefs on the standard of review under ERISA and whether the Court should permit discovery outside the administrative record.  (Doc. 10).  On June 20, 2014, after the parties had filed their briefs, the Court held a hearing on these issues.  On April 23, 2015, the Court issued an order that Plaintiffs could only conduct limited fact discovery as to the Plan Administrator's alleged conflict of interest.  (Doc. 21).  Pursuant to the Court's Order, Defendant produced the Plan Administrator to be deposed, answered interrogatories, produced approximately 1,500 pages of documents in response to Plaintiffs' requests, and answered Plaintiffs' requests for admissions.  On the next to last day of discovery, Plaintiffs served Defendant with two Verified Statements which attached voluminous additional documents that were not contained in the administrative record.  On the final day of

6

discovery, Plaintiffs served Defendant with a third Verified Statement that had no attachments. It is clear from the face of the documents attached to the Statements, as well as the facts contained in the Statements themselves, that this new information was well-known to the Plaintiffs at the time they filed their claim and appeal.

On September 29, 2015, Plaintiffs filed their motion for summary judgment (Doc. 27), memorandum of law in support of their motion for summary judgment (Doc. 27-1), and statement of undisputed facts (Doc. 28). In their statement of undisputed facts, Plaintiffs cite several new exhibits in an attempt to introduce new facts into the administrative record. Specifically, Plaintiffs cite the following:

- Bargaining Meeting Notes dated January 19, 2012, February 14, 2012, February 20, 2012, and February 22, 2012 (Plaintiffs' Exhibits 6 through 8 and 10) (attached as Exhibit H);

- Marcus Hook Refinery's Management Proposal #5 (Plaintiffs' Exhibit 9) (attached as Exhibit I);

- An e-mail from John F. O'Toole, Sunoco Human Resources, to Steven T. Gaines, et al. dated April 26, 2012 (Plaintiffs' Exhibit 11) (attached as Exhibit J);

- An e-mail from John F. O'Toole to Edwin Eriksen, et al. dated August 8, 2012 (Plaintiffs' Exhibit 13) (attached as Exhibit K);

- The Termination Agreement between Sunoco and Local 10-1 (Plaintiffs' Exhibit 15) (attached as Exhibit L);

- James Savage's, President of USW Local 10-1, July 30, 2015 Verified Statement ("Savage's Statement") (Plaintiffs' Exhibit 69) (attached as Exhibit M);

- Plaintiff Paul Felker's July 28, 2015 Verified Statement, which attaches 14 pages of exhibits ("Felker's Statement") (Plaintiffs' Exhibit 70) (attached as Exhibit N); and

DMEAST #22488428 v6

- Plaintiff William Dunbar's July 28, 2015 Verified Statement, which attaches 15 pages of exhibits ("Dunbar's Statement") (Plaintiffs' Exhibit 71) (attached as Exhibit O).[1]

For the reasons set forth below, these exhibits constitute inappropriate and inadmissible evidence.  Accordingly, Defendant respectfully requests that this Court (a) strike Plaintiffs' Exhibits 5 through 11, 13, 15, and 69 through 71; and (b) require that Plaintiffs submit an amended memorandum of law in support of their motion for summary judgment and statement of undisputed facts removing any reference to or reliance on those exhibits.

## III.    DISCUSSION

### A.    Standard of Review

Rule 56(c)(4) of the Federal Rules of Civil Procedure governs the use an affidavit or a declaration in a motion for summary judgment.  The Rule states: "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  While Rule 56(e), which sets forth the form that affidavits must take, it "does not specifically provide for a motion to strike, courts have held that a party wishing to challenge an opponent's affidavits for containing defects under Rule 56(e) should move to strike the affidavits or else waive any objection to the defects."  See e.g., Coleman v. Cerski, No. CIV.A. 3:04-CV-1423, 2007 WL 2908266, at *3 (M.D. Pa. Oct. 4, 2007) (citing In re Unisys Sav. Plan Litig., 74 F.3d 420, 437 n.12 (3d Cir.1996)).

Where the evidence contained in an exhibit, affidavit, or declaration would not be admissible as evidence, a court may grant a motion to strike.  In Murray v. IBEW Local Union

---

[1]    Collectively, the Dunbar, Felker, and Savage Statements will be referred to herein as the "Verified Statements."

8

No. 98, an ERISA action, the claimant submitted exhibits along with her response to the plan's motion for summary judgment. Murray v. IBEW Local Union No. 98, No. 10-3852, 2011 WL 1883168, at *1 (E.D. Pa. May 17, 2011). The plan moved to strike the exhibits, arguing that the claimant was attempting to improperly supplement the record with information and materials that were not submitted to the plan administrator at the time the benefits decision was made. Id. at *1-2. In response, the claimant submitted an affidavit that stated that the documents were provided to the plan for its consideration by her attorney. Id. at *2. The affidavit did not contend, however, that the claimant had provided the documents to the plan herself, that she had personal knowledge that her attorney sent the documents to the plan, or that she had any documentary evidence to support her contentions that the plan had previously received the documents. Id. at *5.

The court reasoned that "the law is clear that 'conclusory allegations in [the claimant's] affidavits, without more, are insufficient to create a genuine issue of material fact.'" Id. at *4 (quoting Dantzler v. Beard, No. CIV A. 05-1727, 2007 WL 5018184, at *8 n.115 (W.D. Pa. Dec. 6, 2007)). Further, even if such conclusory allegations were sufficient to defeat summary judgment, "the party producing them must establish that such evidence is competent." Id. (citing Hurd v. Williams, 755 F.2d 306, 308 (3d Cir. 1985)). The court concluded that the claimant's affidavit was insufficient to create a genuine issue of material fact because, among other things, she did not have personal knowledge of what her attorney did or did not do with the documents she had provided him. Id. at *5. Further, "[b]ecause her allegations would not be admissible evidence, they [could not] be used to defeat summary judgment" or the plan's motion to strike. Id. Therefore, the court granted the plan's motion to strike. Id.

9

Here, in their memorandum of law, Plaintiffs have attempted to introduce extra evidence that had not been submitted to the Plan Administrator and to which Defendant had no opportunity to respond.  Each one of these statements, however, contains evidence that would not be admissible at trial for three reasons.  First, the exhibits are an inappropriate attempt to augment the administrative record, which the Third Circuit has held may not be augmented unless to demonstrate a conflict of interest or bias during litigation if the arbitrary and capricious standard of review applies.  See Kosiba, 384 F.3d at 67 n.5.  Second, regarding the Verified Statements, the sections upon which the Plaintiffs rely contain inadmissible hearsay that are inadmissible at trial.  Lastly, the Verified Statements are replete with impermissible and improper legal arguments.  Therefore, this Court should grant Defendant's Motion to Strike.

**B.       The Plaintiffs' Offer Additional Exhibits in an Attempt to Impermissibly Augment the Administrative Record**

The Third Circuit has made it abundantly clear that, in reviewing the decision of a claim administrator under the arbitrary and capricious standard, a district court, which is sitting as an appellate body, is limited to that evidence that was before the administrator when it made the decision being reviewed.  See Howley v. Mellon Fin. Grp., 625 F.3d 788, 793 (3d Cir. 2010) (noting that when applying the arbitrary and capricious standard of review, courts must base their review of an administrator's decision "on the materials that were before the administrator when it made the challenged decision. . . . Materials that the parties failed to put before the administrator are not usually relevant to the inquiry of whether the administrator abused its discretion"); see also Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997) ("Under the arbitrary and capricious standard of review, the 'whole' record consists of that evidence that was before the administrator when he made the decision being reviewed."), abrogated on other grounds by Miller v. Am. Airlines, 632 F.3d 837, 846-47 (3d Cir. 2011); Kosiba, 384 F.3d at 67 n.5 ("[T]he

10

record for arbitrary-and-capricious review of ERISA benefits denial is the record made before the plan administrator, and cannot be supplemented during litigation"); Elms v. Prudential Ins. Co. of Amer., No. 06-5127, 2008 WL 4444269, *17 n.24 (E.D. Pa. Oct. 2, 2008) ("Generally, only evidence in the administrative record is admissible for the purpose of determining whether the plan administrator's decision was arbitrary and capricious."). The reason for the precedent limiting a litigant's ability to supplement the record makes sense – this is an ERISA case, where the district judge effectively is an appellate body. Thus, just as in other appellate cases, Plaintiffs cannot expand the factual record on appeal before this Court.

In O'Sullivan v. Metropolitan Life Insurance Company, an ERISA case, the plaintiff argued that the court should review evidence beyond the administrative record. O'Sullivan v. Metro. Life Ins. Co., 114 F. Supp. 2d 303, 309-10 (D.N.J. 2000). The court explained that

> [t]he purpose in limiting the evidentiary scope of judicial review is to encourage the parties to resolve their disputes at the administrator's level. If district courts permitted claimants to present additional evidence in reviewing benefits determinations, "the administrator's review of claims [would] be circumvented." ERISA's goal of providing plan participants and beneficiaries an expeditious and inexpensive method of resolving their disputes would be seriously impaired.

Id. at 309 (internal citations omitted). Additionally, the court disregarded the plaintiff's argument that plan administrators manipulate the administrative record by only including documents helpful to their decision, an argument Plaintiffs here also make in their brief:

> While plan administrators could potentially manipulate the process of judicial review by excluding from its record evidence harmful to their positions, certain safeguards do exist to achieve both fairness and efficiency. A claimant can gain access to the materials in the plan administrator's claim file, and simply supplement the file with additional evidence that weighs in the claimant's favor. If a claimant submits additional evidence and requests the plan administrator to reconsider the previous decision, that additional

11

evidence would be included as part of the administrative record. Limiting the review of evidence to that which was before the plan administrator at the time of its decision is thus not overly burdensome to claimants, minus exceptional circumstances.

Id. at 309-10.

Recognizing this limited scope of review, the Third Circuit is clear that new evidence may be considered **only** to demonstrate conflicts of interest or potential biases, which, if established, would be weighed as a factor in determining whether there is an abuse of discretion. Post v. Hartford Ins. Co., 501 F.3d 154, 168 (3d Cir. 2007); see Elms, 2008 WL 4444269, *17 n.24. The Third Circuit is equally clear that new evidence **may not** be considered, however, if its purpose is to prove that the plan administrator reached the wrong decision. See Post, 501 F.3d at 168-69; Elms, 2008 WL 4444269, *17 n.24.

A conflict of interest "arises when the administrator has a non-trivial financial incentive to act against the interest of the beneficiaries." Post, 501 F.3d at 162 (citing Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 389 (3d Cir. 2000)). Courts consider the structural and procedural factors at issue to decide whether the plan administrator operated under a conflict of interest – the structural inquiry focuses on whether the plan administrator had a non-trivial financial incentive to act against the interests of the beneficiaries, whereas the procedural inquiry focuses on the process by which the administrator came to its decision to determine whether there is evidence of bias. Id. at 162-66. Accordingly, in order to be admissible, the new evidence must either go towards establishing the structural (*i.e.,* the sophistication of the parties; the information accessible to the beneficiary; the financial arrangement between the employer and administrator; or the financial status of the administrator) or procedural (*i.e.,* reversal of position without additional medical evidence; self-serving selectivity in the use and interpretation of physicians' reports; disregarding staff recommendations that benefits be

12

awarded; or requesting a medical examination when all of the evidence indicates disability) factors.  Id. at 163, 164-65.

In Post, the claimant sought to introduce new evidence in the form of medical reports attached to her motion for summary judgment – five that were reports from doctors the claimant consulted just after her accident and two that were reports from the claimant's then-current doctors that were prepared at the request of counsel.  Id. at 168.  The insurance company objected to the claimant's attempt to augment the record and filed a motion to strike those exhibits; the district court granted the motion.  Id.  On review, the Third Circuit upheld the district court's decision, explaining that "[b]ecause all of [the] documents [were] medical reports, they [were] not relevant to the issue of bias; rather they [were] only relevant to whether [the insurance company] reached the right decision."  Id. at 168-69.  The court explained that, the reports could not be considered for that purpose, because they should have been submitted during the insurance company's review of the claim and made part of the administrative record. Id. at 169.

Similarly, in Elms, the court permitted the parties to conduct limited discovery to the issue of the plan administrator's potential conflict of interest and, in her motion for summary judgment, the claimant submitted this additional evidence in an attempt to supplement the record.  Elms, 2008 WL 4444269, *17 n.24.  Among other new evidence, the claimant introduced her own executed affidavit in which she described her job responsibilities and salary. Id.  The court held that introducing this evidence was "entirely inappropriate," explaining that her assertions were not relevant to the issue of bias.  Id.  To the contrary, the court explained, "the potential relevance of [the claimant's] assertions [bore] on the issue of whether [the plan administrator] reached the right decision in finding that she could perform her job

13

responsibilities."  Id.  Thus, as in Post, the court stated that the claimant should have submitted this evidence to the plan administrator.  Id.

Courts in other circuits also have addressed the limited manner in which the administrative record can be supplemented under the arbitrary and capricious standard.  For example, in Majeski v. Metropolitan Life Insurance Company, the claimant argued that the plan had a conflict of interest.  Majeski v. Metro. Life Ins. Co., 590 F.3d 478, 481 (7th Cir. 2009).  To defeat the plan's motion for summary judgment, the claimant attempted to introduce the deposition testimony of the plan's independent physician consultant who reviewed the claimant's file.  Id.  The claimant also sought to introduce her Social Security Award into the record.  Id.  Neither of these documents were part of the administrative record.  Id.  The Seventh Circuit found that the district court properly refused to consider the additional evidence, noting that even when a conflict is alleged, the plan need not allow a complainant to "supplement the administrative record without limit, even if she is offering evidence of a reviewing doctor's bias."  Id. at 483; see also Meade v. Nat'l City Corp. Welfare Plan, 394 F. App'x 308, 311 (7th Cir. 2010) (holding that the district court did not commit reversible error when it declined to review evidence outside of the administrative record).

Recognizing the limited extent which an administrative record may be supplemented, this Court's April 23, 2015 Order permitted Plaintiffs to supplement the administrative record with evidence developed in the course of discovery on the narrow issue of whether the Plan Administrator operated under a conflict of interest.  In accordance with that Order, Defendant produced the Plan Administrator to be deposed, answered interrogatories, produced approximately 1,500 pages of documents in response to Plaintiffs' requests (withholding nothing on privileged grounds, although Defendant was entitled to do so), and

14

answered Plaintiffs' requests for admissions.  Plaintiffs then – on the last two days of discovery – served Defendant with three Verified Statements, two of which attached additional documents.  None of this information was submitted by Plaintiffs or contained in any way in the administrative record.  Plaintiffs' tactical decision to withhold these documents until the final day of discovery deprived Defendant of any ability to introduce counter-evidence and to take discovery on the issues.

In their memorandum of law and statement of undisputed facts, Plaintiffs impermissibly seek to supplement the administrative record with 11 exhibits.[2]  As an initial matter, in the January 22, 2013 letter, the Plan Administrator informed Plaintiffs of their right to submit additional materials to the Plan Administrator.  (Ex. E at D-0010).  Plaintiffs have been represented by counsel throughout their entire claim for benefits and the appeal process.  In addition, the same counsel had submitted an earlier letter, on behalf of the union, asserting essentially the same arguments in favor of benefits.  Plaintiffs' claim letter consisted of seven pages putting forth their arguments (including the earlier union letter).  The appeal letter was nearly 50 pages long, including all attached exhibits.  Notwithstanding this more than ample opportunity to submit any and all facts and documents which Plaintiffs regarded as pertinent to their claim, none of the new information tendered in the final days of discovery in this matter – nearly three years after the initial claim – was submitted to the Plan Administrator.

As noted above, in the January 22, 2013 claim denial letter, the Plan Administrator specifically informed Plaintiffs' of their right to appeal and to "submit additional materials in support of the members of the MWF's claim for benefits" and further advised:

---

[2]      Although Defendant maintains that the structural conflict of interest was not determinative of the claim here, pursuant to the Court's April 23, 2015 Order (Doc. 21), Defendant does not take exception with Plaintiffs' introduction of other exhibits that are not part of the administrative record because these exhibits relate to the conflict issue.

15

"Within sixty (60) days of receipt of this letter, you may file a written request for a review of the claim denial.  In support of such request, you may review pertinent documents **and/or submit issues and comments in writing**.  The written appeal should specify the benefit being claimed, the basis for the appeal **and any other pertinent data or information**, and should be submitted to my attention at the address above."  (Id. at D-0010) (emphasis added).  In their appeal, Plaintiffs submitted 46 pages of exhibits attached to their three-page appeal letter, yet they included none of the new information which they now suggest the Court consider in reviewing the claim.

As an additional matter, Plaintiffs do not offer these exhibits to argue that a conflict of interest existed; rather their purpose is to undermine the merits of the Plan Administrator's decision, an impermissible basis to supplement the record in an ERISA action. For example, Plaintiffs introduce the Bargaining Meeting Notes, Marcus Hook Refinery's Management Proposal #5, the April 26 and August 12, 2012 e-mails from Mr. O'Toole, the Termination Agreement, and Savage's Statement to argue that Defendant's position on the claim is inconsistent with the position it took in those documents or at those meetings.  (See Plaintiffs' memorandum of law at 8-10; Plaintiffs' statement of undisputed facts at ¶¶ 6, 22, 24, 39).

Further,  Felker's Statement purports to offer the following factual assertions, which are summarized in Plaintiffs' statement of undisputed facts:  (a) "we" understood "we" would be laid off from Sunoco; (b) "we" were told to report to the Philadelphia Refinery or be fired; (c) Felker assumed he would not get severance if he did not show up; (d) Felker understood that he would get severance if he showed up; (e) Sunoco represented to "us" that "we" would be severed from the Philadelphia Refinery; (f) Felker was never told that his assignment to the Philadelphia Refinery was permanent; (g) he was not consulted during

negotiations between the company and the Union; (h) at the meeting about whether they would be getting severance, they were told, "No"; (i) he signed a letter about the new job at the Philadelphia Refinery; and (j) Felker never authorized the Union to bargain away his rights.  (See Ex. N; Plaintiffs' statement of undisputed facts at ¶¶ 19(a), 20, 21(e), (f), 30-31, 34-36). Additionally, Felker's Statement contains an extensive recitation of his personal situation in terms of seniority, pay scale, taxation, union membership, and retirement benefits.  (See Ex. N at 3).  Furthermore, Felker attaches the April 26 and August 9, 2012 e-mails from Mr. O'Toole. (Ex. N at Exs. A, B; Plaintiffs' statement of undisputed facts at ¶¶ 20, 32, 34).  The use of "we" purportedly encompasses the entire group of Plaintiffs.

Similarly, Dunbar's Statement, in relevant part, contains the following factual assertions, which also are summarized in Plaintiffs' statement of undisputed facts:  (a) Dunbar was told that the assignment was permanent; (b) the Union did not consult with him during negotiation of severance and other terms; and (c) he was neither represented by a union nor permitted to vote on the new collective bargaining agreement.  (See Ex. O; Plaintiffs' statement of undisputed facts at ¶¶ 19(b), 21(e), 30-31, 34, 36).  Dunbar's Statement also contains an extensive recitation of the impact of his temporary assignment to the Philadelphia Refinery on the bargaining agreement and his seniority, pay scale, taxation, and retirement benefits.  (See Ex. O at 3). Moreover, he attaches correspondence regarding his job offer at the Philadelphia Refinery and the April 26 and August 9, 2012 e-mails from Mr. O'Toole, which Felker had given him.  (Ex. O at Exs. A-C; Plaintiffs' statement of undisputed facts at ¶¶ 20, 32, 34).

As in Post and Elms, these exhibits cannot reasonably be viewed to establish any of the structural or procedural factors outlined above that would suggest a conflict existed.  See Post, 501 F.3d at 168-69; Elms, 2008 WL 4444269, *17 n.24.  Rather, this evidence goes solely

17

towards the ultimate issue of whether the plan administrator made the correct decision.  Thus, these exhibits constitute a blatant attempt to expand the administrative record to include factual information never submitted to or considered by the Plan Administrator and should be excluded.[3]

Plaintiffs dedicate a substantial portion of their memorandum in support of summary judgment to their argument that the "administrative record" consists of all facts known to the Plan Administrator, particularly where the administrator is a company employee, not just those reflected in the documents actually submitted to the Plan Administrator by the claimants or those documents he reviewed as part of the claim and appeal process.  (Plaintiffs' memorandum of law at 5-8).  Plaintiffs' position, however, is based entirely on the decision of the U.S. Court of Appeals for the Fourth Circuit in Helton v. AT&T, Inc., 709 F.3d 343 (4th Cir. 2013) and their argument that this Court should ignore established Third Circuit precedent regarding the limited scope of review in an ERISA case and adopt the Fourth Circuit's interpretation instead.  Id. There is simply no reason that this Court should entertain Plaintiffs' request for a change in law. As explained more fully above, this Circuit routinely holds that the administrative record may only be supplemented to establish potential biases and conflicts of interest.  With its April 23, 2015 Order (Doc. 21), this Court recognized this Circuit's approach to supplementing the record in an ERISA action, limiting the scope of admissible extra evidence to that developed in the course of discovery on the narrow issue of whether the Plan Administrator operated under a conflict of interest.  Accordingly, this Court should disregard Plaintiffs' argument for a change in law.

---

[3]     With regard to Management Proposal #5, Plaintiffs admit that it was incorporated verbatim into the Settlement Agreement.  (Plaintiffs' statement of undisputed facts at 4). Therefore, for this additional reason, it need not be added to the administrative record here.

18

Plaintiffs also argue that they are entitled to supplement the record with new information because they show that the Plan Administrator was either not provided or ignored relevant facts. Regarding the Bargaining Meeting Notes and Savage's Statement, Plaintiffs argue that the Plan Administrator's decision on the claim was incorrect, because he was not provided copies of the meeting notes or told about negotiations between Sunoco and Local 10-1. (See Plaintiffs' memorandum of law at 8-9, 11-12, 26-28). (See Plaintiffs' memorandum of law at 26-28). Namely, Plaintiffs assert that a conflict of interest is evident because "[d]iscovery has revealed that highly relevant evidence known to [Defendant] but unhelpful to its arguments was not considered, and in some cases appears to have been deliberately not disclosed." (Id. at 26). Plaintiffs' argument fails, however, because there is no evidence that the Plan Administrator lacked the necessary information when reviewing the claim. Additionally, in order to prove that the Plan Administrator ignored allegedly relevant facts, they have to have been submitted to the Plan Administrator as part of the claim or appeal. Quite simply, despite ample opportunity to do so, Plaintiffs did not submit this evidence.

In short, Plaintiffs are attempting to "boot-strap" the inclusion of new facts in what is essentially an appeal of their claim to this Court – facts they could have submitted themselves in the claim/appeal proceeding, but opted not to do. They cannot now fault the Plan Administrator based on whether he considered facts they never presented in support of their claim. Nor can they justify the supplementation of the administrative record at this late date by arguing the Plan Administrator selectively ignored factual information that Plaintiffs themselves ignored.

Plaintiffs also cite O'Malley v. Sun Life Assurance Company of America in support of their argument that the Felker and Dunbar Statements should be admissible. (Id. at

19

10). In O'Malley, however, the court held that it may consider "evidence outside the administrative record [if it] is related to interpreting the plan or explaining medical terms and procedures relating to the claim," but that it is "precluded from receiving evidence to resolve disputed material facts, for instance, 'a fact the administrator relied on to resolve the merits of the claim itself.'" O'Malley v. Sun Life. Assur. Co. of Am., No. 04-5540, 2006 WL 182099, at *6 (D.N.J. Jan. 23, 2006) (quoting O'Sullivan v. Metro. Life Ins. Co., 114 F. Supp. 2d 303, 309 (D.N.J. 2000)). The court found that certain portions of the affidavit were admissible, but disregarded those that were not within the scope of the administrator at the time of the decision. Id. Here, Plaintiffs seek to admit the Verified Statements in support of their argument that the Plan Administrator reached the wrong decision, which is expressly the reason the court in O'Malley precluded the affidavit.

Accordingly, this Court should grant Defendant's Motion to Strike and limit its review to the administrative record.

**C.     The Sections of the Verified Statements Upon Which Plaintiffs Rely Contain Inadmissible Hearsay, and Even Hearsay within Hearsay.**

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. It generally is inadmissible as evidence "because the statement is inherently untrustworthy: the declarant may not have been under oath at the time of the statement, his or her credibility cannot be evaluated at trial, and he or she cannot be cross-examined." United States v. Reilly, 33 F.3d 1396, 1409 (3d Cir. 1994). Courts in this district routinely agree that "[p]ortions of affidavits containing inadmissible hearsay should . . . be disregarded." Keating v. Bucks Cnty. Water & Sewage Auth'y, No. 99-1584, 2000 WL 1888770, at *3 (E.D. Pa. Dec. 29, 2009) (internal citations omitted); see, e.g., Carey v. Beans, 500 F. Supp. 580, 583-84 (E.D. Pa. 1980) (explaining that inclusion of hearsay in an affidavit is improper) (citing Maiorana v.

20

MacDonald, 596 F.2d 1072, 1080 (1st Cir. 1979)), aff'd, 659 F.2d 1065 (3d Cir. 1981).  In

Keating, the court held that statements in an affidavit that certain coworkers had informed the

plaintiff that he was regarded as a perpetrator of the fraud at issue in the litigation were

inadmissible hearsay.  Keating, 2000 WL 1888770, at *4.

In this matter, each of the Verified Statements are riddled with hearsay.  For

instance, Felker's Statement refers to statements by Mike Griffin, Sunoco's General Foreman, to

both Felker and to others about being terminated, reactivated, and assigned to the Philadelphia

Refinery.  (Ex. N at 2).  It also refers to a conversation with Mr. O'Toole about getting severance

and contains statements about the factual situation of the other Plaintiffs.  (Id. at 2-4).

Additionally, Felker's Statement reports on a meeting with six Sunoco representatives from

Human Resources and maintenance workers.  (Id. at 4-5).  Moreover, throughout his statement,

Felker refers to "we" and other named Plaintiffs in the action, purporting to expand the new facts

to them as well.  (See id.).

Similarly, Dunbar's Statement contains two instances of hearsay within hearsay.

In his Statement, Dunbar refers to a meeting he did not attend and summarizes what others told

him.  (Ex. O at 4) ("As I was away I did not attend the meeting on August 6, 2012, referred to in

Paul Felker's statement, but he told me about it. . . .).  Similarly, Dunbar states that co-Plaintiff

Felker told him that Mr. O'Toole told him that they would be severed.  (Id. at 2-3).  Separately,

Dunbar's Statement refers to representations by Mr. Griffin about an offer to work at the

Philadelphia Refinery and various representations on behalf of a group of Plaintiffs that they

never authorized Local 10-1 to "bargain away [their] rights."  (Id. at 2, 4).

Finally, Savage's Statement refers to statements and representations of Phil

Rinaldi, Chief Executive Office of PES, at a meeting.  (Ex. M at 2) ("One of the additional items

DMEAST #22488428 v6

was his statement:  'We will hire the MWF workers.' (or words substantially to that effect.)  This was a proposal that came exclusively from Mr. Rinaldi, not from me.").  Savage's Statement also refers to the fact that Liz Bilotta, Sunoco Human Resources, did not indicate that hiring by PES would have any impact on severance.  (Id.).

Plaintiffs offer these hearsay statements for the truth of the matter asserted—the terms of the employee severance agreement and employment conditions.  Thus, this Court should grant Defendant's Motion to Strike on this separate basis, as well.

**D.      The Verified Statements Contain Inadmissible Legal Argument and Therefore Should be Stricken from the Record.**

A court also may grant a motion to strike a verified statement where the statement(s) relied upon are legal conclusions.  In York International Corporation vs. Liberty Mutual Insurance Company, the defendant insurance company provided an affidavit in support of its motion for summary judgment in an asbestos-related matter.  York Int'l Corp. vs. Liberty Mut. Ins. Co., No. 1:10-CV-0692, 2015 WL 4162981, at *2 (M.D. Pa. July 9, 2015).  The plaintiff moved to strike portions of the affidavit because it contained impermissible legal conclusions.  Id. at *7.  The court noted that "[b]ecause, as the factfinder, a jury does not decide questions of law, legally conclusive statements, in which the law is applied to the facts, are not helpful to the jury and are thus inadmissible at trial or at summary judgment."  Id.  Therefore, the court granted the plaintiff's motion to strike a statement that concluded that New York was the place of contracting (*i.e.,* a legal conclusion).  Id. at *8; see also Carey v. Beans, 500 F. Supp. at 583 (E.D. Pa. 1980) aff'd, 659 F.2d 1065 (3d Cir. 1981) (noting that "affidavits which contain conclusions of law, ultimate facts, assertions, arguments and inferences derived from the opposing party's affidavits . . . may be 'disregarded.'").

22

Here, this Court should strike the Verified Statements because, as in York International Corporation, the statements contain legal conclusions that would not be helpful to the Court. Specifically, Felker and Dunbar's Statements conclude that "Sunoco took inconsistent positions with us so they would benefit from both positions" and that Sunoco did so to "save a great deal of money, well into the millions of dollars, in pension benefits." (Ex. N at 5-6; Ex. O at 5). Separately, Savage's Statement concludes that he "did not feel that [he] had to be concerned about [severance benefits] because [no one] gave any indication that this offer would have any effect on the severance rights of the MWF workforce, which [he] had no power to bargain away in any event." (Ex. M at 2). All of these statements constitute legal conclusions and, thus, are inadmissible. Accordingly, this Court should grant Defendant's Motion to Strike on this separate basis, as well.

23

## IV.   CONCLUSION

For the foregoing reasons, Defendant USW Local 10-901, USW Local 10-901 (SU) and USW Local 10-901 (NE) Marcus Hook Refinery Workers Involuntary Termination Plan respectfully requests that this Court grant its Motion to Strike and strike Plaintiffs' Exhibits 5 through 11, 13, 15, and 69 through 71 and require that Plaintiffs' submit a revised memorandum of law in support of their motion for summary judgment and statement of disputed facts removing any reference to or reliance on those exhibits.

/s/ Brian D. Pedrow
Brian D. Pedrow
Mary Cate Gordon
BALLARD SPAHR LLP
A Pennsylvania Limited Liability Partnership
1735 Market Street
51st Floor
Philadelphia, PA 19103
215.864.8108
*Attorneys for Defendant*

Dated:  October 14, 2015

24

DMEAST #22488428 v6